# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4673 | DATE | July 2, 2002 |
| CASE TITLE | *Halprin, et al. vs. Prairie Single Family Homes of Dearborn Park Association, et al.* | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The court grants in part and denies in part defendants' motion to dismiss Counts I, II, III, V, and VII of plaintiffs' second amended complaint [26-1] as follows. The court grants defendants' motion to dismiss Counts I-III, involving the Fair Housing Act. On its own motion, the court dismisses without prejudice Counts IV-VII, the remaining state law claims, to be filed in state court. The court denies as moot defendants' motion to dismiss Counts V and VII. The court denies as moot defendants' motion to quash [24-1].
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 03 2002 date docketed | 37 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | S.B. docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CW | courtroom deputy's initials | | | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

[Stamp: 02 JUL -2 PM 5:01 U.S. DISTRICT COURT CLERK]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBYN HALPRIN and RICK HALPRIN, )
both individually and derivatively, as )
members of THE PRAIRIE SINGLE )
FAMILY HOMES OF DEARBORN PARK )
ASSOCIATION, an Illinois corporation, on )
its behalf, )
                                     )
          Plaintiffs, )
                                   )
          v. )   Case No. 01 C 4673
                                   )
THE PRAIRIE SINGLE FAMILY HOMES )   Judge James H. Alesia
OF DEARBORN PARK ASSOCIATION, an )
Illinois Corporation; MARK ORMOND, )
individually and as an officer, director, and )
agent of The Prairie Single Family Homes of )
Dearborn Park Association; JOHN HOOKER,)
individually and as an officer, director, and )
agent of The Prairie Single Family Homes of )
Dearborn Park Association; DOWNS, MOHL )
& COMPANY, an Illinois corporation; and )
DAVID MOHL, individually and as an officer )
and agent of Downs, Mohl & Company and as )
an agent of The Prairie Single Family Homes )
of Dearborn Park Association, )
                                   )
          Defendants. )

DOCKETED JUL 0 3 2002

## MEMORANDUM OPINION AND ORDER

Before the court are (1) defendants' motion to dismiss Counts I-III, V, and VII of plaintiffs' second amended complaint, and (2) defendants' motion to quash a subpoena seeking billing for Prairie Homes from September 1999 to the present. The court grants in part and denies in part defendants' motion to dismiss as follows. The court grants defendants' motion to

dismiss Counts I-III, involving the Fair Housing Act. On its own motion, the court dismisses without prejudice Counts IV-VII, the remaining state law claims in plaintiffs' amended complaint. The court denies as moot defendants' motion to dismiss Counts V and VII and defendants' motion to quash.

## I. BACKGROUND

The following facts are taken from plaintiffs' second amended complaint and are assumed to be true for the purposes of defendants' Rule 12(b)(6) motion to dismiss. Plaintiff Robyn Halprin ("Robyn") owned a home in a subdivision known as The Prairie Single Family Homes of Dearborn Park ("the Subdivision") in Chicago, Illinois. Robyn was engaged or married to Plaintiff Rick Halprin ("Rick"), who is Jewish. On or after January 8, 2001, Rick became a co-owner of the home.

Defendant The Prairie Single Family Homes of Dearborn Park Association (the "Association") was a not-for-profit corporation organized under the laws of the State of Illinois for the purpose of managing and providing services for the benefit of persons owning homes in the Subdivision. Defendant Mark Ormond ("Ormond") was a resident of the Subdivision, and a member and officer of the Association. Defendant Downs, Mohl & Company ("Downs, Mohl") was a business corporation organized under the laws of the State of Illinois, whose business activities included the provision of management services to the Association. Defendant David Mohl ("Mohl") was the President and an employee of Downs, Mohl.

Problems began around November 2, 2000, when Robyn was not elected to one of two vacant Director seats on the Association's Board and Ormond refused to inform Robyn how many proxy votes had been cast in the election. Robyn believed that Ormond strategically used

2

proxies to maintain control of Association elections. The Association also refused Robyn's December 2000 requests for documents pertaining to matters such as the Association's spending practices and conduct of its Board elections.

At some time between December 20, 2000 and January 10, 2001, Ormond vandalized Robyn's home by writing with a red marking pen on a stone wall the phrase "H-town property." Plaintiffs allege that "H-town" is a shorthand version of the derogatory slang term "Hymie Town," which refers to places where Jewish persons reside. Ormond further vandalized their home by damaging plants and trees and cutting down strings of holiday lights. Shortly after the vandalism incident, Robyn posted flyers offering a reward for information identifying the vandals. She posted the flyers on light poles and trees which comprised public, non-Association property. Ormond removed or destroyed the reward notices and instructed the Association's lawyer to exert pressure on the City of Chicago Departments of Streets and Sanitation to demand removal of the signs. Also, on January 8, 2001, Ormond blocked Robyn's attempt to address the Board regarding Association management.

In an effort to investigate the vandalism, plaintiffs asked Mohl for copies of Association records that could be handwriting exemplars for Ormond. Mohl agreed but delayed the availability of the records with the intent to destroy or fabricate documents. Also, one or more of defendants altered Board minutes and destroyed a tape recording of a September 25, 2000 board meeting to hide the fact that Ormond threatened to "make an example" of Robyn.

On February 6, 2001, Mohl notified plaintiffs that they would be charged at a February 13, 2001 Board meeting with violating the Association's Declaration of Easements, Restrictions and Covenants by posting a notice of reward and request for information concerning

3

the vandalism incident. The notice stated that plaintiffs had already been found guilty and the Board was to consider legal sanctions and fines. Then, on February 13, 2001, in front of fifteen members of the Association, the Board's representative threatened to force plaintiffs to sell their home if they did not remove the reward sign. After the meeting, the Association President, defendant John Hooker ("Hooker"), wrote a letter thanking the members who attended the meeting for supporting the threats made against plaintiffs.

In addition, defendants have applied chemicals to plaintiffs' yard despite plaintiffs' request not to do so and despite having been informed of the effects the chemicals were having on Robyn's health and peace of mind. The defendants have also enacted or purported to enact several new rules targeted solely at restricting the freedom of plaintiffs to enjoy the use of their home – for example, defendants passed new rules prohibiting plaintiffs from storing firewood in their yard or building a deck on their property, and displacing Robyn's garden.

As a result of these disputes, plaintiffs filed a seven-count second amended complaint against defendants. Count I is a claim for violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(b), 3604(c) and 3617 ("§ 3604" and "§ 3617"). Count II is a claim for conspiracy to violate §§ 3604 and 3617. Count III is a claim for aiding and abetting acts prohibited by § 3604, in violation of § 3617. Count IV is a claim for violation of the Illinois Hate Crimes Act, 720 ILL. COMP. STAT. 5/12-7.1. Count V is a claim for breach of fiduciary duty under 805 ILL. COMP. STAT. 105/107.75 and 765 ILL. COMP. STAT. 605/18.5. Count VI is a claim for trespass, conversion, and damage to property. Count VII is a claim for return of fees paid and damages.

Before the court are (1) defendants' motion to dismiss Counts I-III, V, and VII of plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and

4

(2) defendants' motion to quash a subpoena seeking billing for Prairie Homes from September 1999 to the present. This court has jurisdiction over plaintiffs' FHA claims in Counts I-III under 28 U.S.C. § 1331 as they arise under federal law. The court has supplemental jurisdiction over plaintiffs' state law claims in Counts IV-VII, pursuant to 28 U.S.C. § 1367(a).

## II. DISCUSSION

### A. Standard for deciding a rule 12(b)(6) motion to dismiss

In addressing defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987); *Cromley v. Bd. of Educ. of Lockport*, 699 F. Supp. 1283, 1285 (N.D. Ill. 1988). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test their sufficiency under the law. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a motion to dismiss, the court reads the complaint liberally, dismissing the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (quoting *Veazey v. Communications & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir.1999)). Nevertheless, in deciding a motion to dismiss for failure to state a claim, the court need not ignore allegations that undermine the plaintiff's complaint, or assign any weight to unsupported conclusions of law. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir.1998). Also, although the Federal

Rules of Civil Procedure provide a liberal notice pleading standard, the complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). With these standards in mind, the court assesses defendants' motion to dismiss.

**B.     Federal claims**

Counts I-III of plaintiffs' second amended complaint are brought under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3619 (the FHA), particularly §§ 3604(b), 3604(c) and 3617. Title VIII is designed to root out discrimination in the housing market. *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992). *See South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991) ("The Fair Housing Act is concerned with both the furtherance of equal housing opportunity and the elimination of segregated housing."); *Southend Neighborhood Improvement Assoc. v. St. Clair County*, 743 F.2d 1207, 1210 (7th Cir. 1984) (finding that the FHA does not protect "intangible interests in ... already-owned property."); *Smart Unique Servs. Corp. v. Mortgage Correspondence of Illinois*, No. 94 C 1397, 1994 WL 274962, at *3 (N.D. Ill. June 16, 1994) ("Thus, to state an FHA claim, the plaintiffs must allege that they were denied the opportunity to buy, rent, or build their own homes.").

In Count I, plaintiffs allege that defendants violated §§ 3604(b), 3604(c) and 3617 of the FHA. In Count II, plaintiffs allege that defendants conspired to violate §§ 3604 and 3617 of the FHA. In Count III, plaintiffs allege that defendants aided and abetted acts prohibited by § 3604, in violation of § 3617. Defendants argue that Counts I-III should be dismissed because the

complaint does not allege conduct contemplated by the FHA. The court will address the viability of plaintiffs' §§ 3604(b), 3604(c) and 3617 claims in turn.[1]

### 1. **Section 3604(b)**

Section 3604(b) makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of *sale or rental of a dwelling, or in the provision of services or facilities in connection therewith*, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b) (emphasis added). Plaintiffs allege that defendants violated § 3604(b) because plaintiffs had the right to purchase and reside in the home regardless of Rick's Jewish faith, and because plaintiffs had the right not to be discriminated against on the basis of Rick's Jewish faith in the provision of services to their dwelling.

The Seventh Circuit has implicitly adopted a narrow reading of the "services or facilities" language in § 3604(b) by describing the subsection as a "prohibition against discrimination in the provision of services or facilities *in connection with the sale or rental of a dwelling.*" *Southend Neighborhood Improvement Ass'n*, 743 F.2d at 1210 (emphasis added). *See Am. Family Mut. Ins. Co.*, 978 F.2d at 299 (citing *Clifton v. Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714 (D.C. Cir. 1991), for the proposition that "services" in § 3604 means services in connection with the *acquisition* of housing, not its *maintenance*; therefore, § 3604

---

[1] In briefing defendants' motion to dismiss, plaintiffs state that they also have alleged a violation of § 3604(a). (Pls.' Resp. to Defs.' Mot. Dismiss Second Am. Compl. at 5.). However, nowhere in their second amended complaint do plaintiffs so much as mention § 3604(a). Therefore, the court need not address § 3604(a) because it is not alleged in the complaint. Even so, plaintiffs have failed to state a claim as a matter of law under § 3604(a) because they already owned their home, and their allegations do not relate to the availability of housing as required under § 3604(a). *See, e.g., South-Suburban Hous. Ctr.*, 935 F.2d at 882. ("*Section 3604(a) applies to the availability of housing.*") (emphasis in original).

applies to discrimination in services such insurance and pricing that effectively *preclude ownership* of housing because of the race of the applicant); *Laramore v. Ill. Sports Facilities Auth.*, 722 F. Supp. 443, 452 (N.D. Ill. 1989) (finding that the most natural reading of § 3604 is the narrow reading reaching only allegations regarding the sale or rental of a dwelling).

Plaintiffs' second amended complaint in no way includes either a direct or inferential allegation with respect to a material element of a § 3604(b) claim: the sale or rental of a dwelling. *See Perkins,* 939 F.2d at 466 (stating that even under the liberal notice pleading standard, a complaint must include either direct or inferential allegations with respect to all material elements of the claims asserted). In fact, plaintiffs' allegation that they already owned their home at the time the problems began undermines their claim under § 3604(b). *See N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (stating that, in deciding a motion to dismiss for failure to state a claim, the court need not ignore allegations that undermine plaintiff's complaint). Because plaintiffs already owned their home and none of plaintiffs' allegations involve the sale or rental of housing, there are no hypothetical facts consistent with plaintiffs' second amended complaint that would entitle plaintiffs to relief under § 3604(b). Therefore, under *Southend Neighborhood Improvement Ass'n* and *Am. Family Mut. Ins. Co.*, plaintiffs fail to state a claim as a matter of law under § 3604(b).

Accordingly, the court grants defendants' motion to dismiss Count I with regard to § 3604(b). Also, because plaintiffs fail to state a claim as a matter of law under § 3604(b), they fail to state a claim as a matter of law for conspiracy to violate § 3604(b) or for aiding and abetting acts prohibited by § 3604(b). Therefore, the court grants defendants' motion to dismiss Counts II-III with regard to § 3604(b).

## 2. Section 3604(c)

Section 3604(c) makes it unlawful:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, *with respect to the sale or rental of a dwelling* that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c) (emphasis added). Plaintiffs allege that defendants violated § 3604(c) because the reference to "H-town," and their actions to exclude plaintiffs from membership on the Association's Board of Directors or from providing input at its meetings, threats of forcing plaintiffs to sell their home, and efforts to thwart plaintiffs' access to documents for purposes of verifying management's performance, comprised a notice and statement to the effect that the sale of a dwelling to non-Jews and persons not affiliated with Jews was preferred, and that the Association intended to discriminate against persons of Jewish faith and persons associated with them.

The plain language of § 3604(c) prohibits advertisements, statements, or other notices which indicate a discriminatory preference to an ordinary reader, made by an owner or his agent in the context of the *selling or renting* of a dwelling. *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556 (7th Cir. 1995); *Mich. Protection & Advocacy Serv., Inc. v. Babin*, 799 F. Supp. 695, 717 (E.D. Mich. 1992) (citing *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 629 F. Supp. 1232, 1259 (N.D. Ohio 1983)). The HUD regulation interpreting § 3604(c) states: "The prohibitions in this section shall apply to all written or oral notices or statements *by a person engaged in the sale or rental of a dwelling.*" 24 C.F.R. § 100.75(b) (emphasis added). "'The purpose of § 3604(c) is to prevent expressions that result in the denial of housing, not to prevent

9

all discriminatory expression.'" *United States v. Space Hunters, Inc.*, No. 00 Civ 1781(RCC), 2001 WL 968993, at *5 (S.D.N.Y. Aug. 24, 2001) (quoting *Babin*, 799 F. Supp. at 716).

The court's own research has revealed that every case successfully pled under § 3604(c) has involved an advertisement, conduct, or oral statement made in the context of the sale or rental of a specific dwelling. *See, e.g., Jancik*, 44 F.3d at 554 (involving conduct in the rental of an apartment); *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 141 (6th Cir. 1985) (affirming district court's holding that § 3604(c) requires as a predicate of the prohibited housing practice the sale or rental of a dwelling; therefore, § 3604(c) prohibits only statements by an owner or his agent that pertain to the selling or renting of his dwelling); *Space Hunters, Inc.*, 2001 WL 968993, at *1 (involving conduct regarding a newspaper advertisement concerning rooms available for rent); *Michael v. Caprice*, 99 C 2313, 1999 WL 688733, at *2 (N.D. Ill. June 11, 1999) (finding that § 3604(c) makes it unlawful to make any discriminatory statement in renting a unit; therefore, a tenant already living in the building cannot allege a violation of § 3604(c)); *Ores v. Willow West Condo. Ass'n*, No. 94 C 4717, 1996 WL 111894, at *1 (N.D. Ill. Mar. 12, 1996) (involving conduct regarding the sale of a condominium); *Steptoe v. Beverly Area Planning Ass'n*, 674 F. Supp. 1313, 1322 n.13 (N.D. Ill. 1987) (finding that defendant's statement could not have violated § 3604(c) because its statement was not made with respect to the sale or rental of a particular dwelling); *Holmgren v. Little Vill. Cmty. Reporter*, 342 F. Supp. 512, 513 (N.D. Ill. 1971) (involving classified advertisements indicating a preference for home buyers and apartment tenants of particular national origins).

Here, plaintiffs have failed to allege that any advertisement, statement, or symbol was made in the context of the sale or rental of plaintiffs' home. Even defendants' alleged threat of

10

forcing plaintiffs to sell their home did not indicate a policy, preference, limitation or discrimination with respect to the sale or rental of a home and could not, therefore, constitute a violation of § 3604(c). *See Heights Cmty Cong.*, 629 F. Supp. at 1298 (finding that racially discriminatory comments did not indicate a policy of racial preference with respect to the sale of a house, and "[s]ince the house was not for sale, the comment was not made with respect to the sale of a house. It, therefore, does not constitute a violation of section 3604(c).").

Again, plaintiffs' second amended complaint in no way contains either a direct or inferential allegation with respect to a material element of a § 3604(c) claim: the sale or rental of a dwelling. Again, plaintiffs' allegations that they already owned their home at the time problems began undermines their claim under § 3604(c). Because plaintiffs already owned their home and none of plaintiffs' allegations involve the sale or rental of housing, there are no hypothetical facts consistent with plaintiffs' second amended complaint that would entitle plaintiffs to relief under § 3604(c). Therefore, plaintiffs fail to state a claim as a matter of law under § 3604(c).

Accordingly, the court grants defendants' motion to dismiss Count I with regard to § 3604(c). Also, because plaintiffs fail to state a claim as a matter of law under § 3604(c), they fail to state a claim as a matter of law for conspiracy to violate § 3604(c) or for aiding and abetting acts prohibited by § 3604(c). Therefore, the court grants defendants' motion to dismiss Counts II-III with regard to § 3604(c).

### 3. § 3617

Section 3617 provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

The Seventh Circuit has expressly declined to decide whether, as a blanket rule, a violation of § 3617 can be established without first establishing a violation of §§ 3603, 3604, 3605, or 3606. *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1288 n.5 (7th Cir. 1977). However, the Seventh Circuit has instructed that when the alleged violation of § 3617 involves the same conduct and the same party responsible for a violation of § 3604, and the court finds the underlying § 3604 claim meritless, the court should also find the § 3617 claim meritless. *South-Suburban Hous. Ctr.*, 935 F.2d at 886 (citing *Metro. Hous. Dev. Corp.*, 558 F.2d at 1288 n.5); *Cass v. Am. Props.*, No. 94 C 2977, 1995 WL 132166, at *3 (N.D. Ill. 1995); *Baxter v. City of Belleville*, 720 F. Supp. 720, 728 (S.D. Ill. 1989). *See Southend Neighborhood Improvement Ass'n*, 743 F.2d at 1210, n.4 ("Based on our determination that the complaint does not state a claim under Section 3604 of the Fair Housing Act, ... the plaintiffs also have not stated a claim under Section 3617 of the Act, which protects against interference with any person in the exercise of rights protected under the Act."). Here, plaintiffs' claims under both § 3604 and § 3617 are founded on the same conduct of the same defendants. The court has already found that these same allegations fail to state a claim under § 3604. *See supra* Sect. II.B.1.-2. Therefore, under *South-Suburban Housing Center* and its progeny, these same allegations fail to state a claim under § 3617.

Even examining the conduct separately, plaintiffs still fail to state a claim under § 3617. Courts have applied § 3617 to threatening, intimidating, or extremely violent discriminatory conduct designed to drive an individual out of his home. These cases involve extreme and overt acts, such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails. *See Babin,* 18 F.3d at 347 (interpreting "interfere with" in § 3617 as including "such overt acts as racially-motivated firebombings"); *Bryant v. Polston,* No. IP 00-1064-C-T/G, 2000 WL 1670938, at *3 (S.D. Ind. Nov. 2, 2000) (finding that allegations that defendants followed plaintiffs' friends into the woods with a shotgun, walking back and forth in the yard while displaying a shotgun, shooting a pistol into the water behind plaintiffs' home while a child was playing in the water behind their home, and running over the foot of one of plaintiffs' children with a boat trailer stated a claim under § 3617); *Johnson v. Smith,* 810 F. Supp. 235, 238-39 (N.D. Ill. 1992) (finding that allegations of cross-burning on plaintiff's lawn and breaking plaintiff's windows stated claim under § 3617); *Stirgus v. Benoit,* 720 F. Supp. 119, 123 (N.D. Ill. 1989) (finding that allegations that defendants firebombed her home to intimidate and coerce her into moving out of the neighborhood because of her race was sufficient to state a claim under § 3617); *Seaphus v. Lilly,* 691 F. Supp. 127, 139 (N.D. Ill. 1988) (finding alleged physical assaults and attempted arson of plaintiffs' home sufficient to state a § 3617 claim); *Waheed v. Kalafut,* No. 86 C 6674, 1988 WL 9092, at *1 (N.D. Ill. Feb. 2, 1988) (finding that allegations that defendant firebombed house, screamed racial epithets, and threw beer bottles and rocks constituted claim under § 3617); *Stackhouse v. DeSitter,* 620 F. Supp. 208 (N.D. Ill. 1985) (finding alleged firebombing of family's car in effort to drive them from the neighborhood

sufficient to state claim under § 3617); *Byrd v. Brandeberg,* 922 F. Supp. 60, 64-65 (N.D. Ohio 1996) (involving a Molotov cocktail thrown onto plaintiffs' porch).

Here, the conduct involved is not contemplated by § 3617. As one court stated,

> it seems clear enough that to bring a claim within § 3617, a plaintiff must allege conduct on the part of a defendant which in some way or other implicates the concerns expressed by Congress in the FHA. If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them. Nothing in the statute or its legislative history supports so startling a proposition.

*United States v. Weisz,* 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996). In the case at bar, plaintiffs' allegations stand in stark contrast to § 3617 allegations that defendants "attempted to frighten and drive them away from the ... neighborhood through acts of violence ...." *Stackhouse,* 620 F. Supp. at 210. Plaintiffs' allegations regarding disputes over proxy votes in the Subdivision's Board of Directors election, denial of access to Board documents, a single incident of vandalism, and an alleged threat to force plaintiffs to sell their home fail to implicate concerns expressed by Congress in the FHA as demonstrated by the applicable case law construing § 3617. *See Egan v. Schmock,* 93 F. Supp. 2d 1090, 1093 (N.D. Cal. 2000) (concluding that Congress did not intend § 3617 to cover *any* discriminatory conduct which interferes with an individual's enjoyment of his or her home; otherwise, "any dispute between neighbors of different races or religions could result in a lawsuit in federal court under the FHA.").

In sum, plaintiffs fail to state a claim as a matter of law under § 3617. Accordingly, the court grants defendants' motion to dismiss Count I with regard to § 3617. Also, because plaintiffs fail to state a claim as a matter of law under § 3617, they fail to state as a matter of law for conspiracy to violate § 3617 or for aiding and abetting acts prohibited by § 3617. Therefore, the court grants defendants' motion to dismiss Counts II-III with regard to § 3617.

C.  **State law claims**

Still pending are (1) Count IV, a claim for violation of the Illinois Hate Crimes Act, 720 ILL. COMP. STAT. 5/12-7.1; (2) Count V, a claim for breach of fiduciary duty under 805 ILL. COMP. STAT. 105/107.75 and 765 ILL. COMP. STAT. 605/18.5; (3) Count VI, a claim for trespass, conversion, and damage to property; and (4) Count VII, a claim for return of fees paid and damages. This court has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

Although § 1367(a) *authorizes* federal courts to exercise supplemental jurisdiction over state law claims, this does not mean that federal courts *must* exercise jurisdiction in all cases. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Rather, supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right ...." *Id.* Although there are "unusual cases in which the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness and comity – will point to federal decision of the state-law claims on the merits," the district judge is given broad power in determining whether such circumstances apply and, thus, whether it is appropriate to retain jurisdiction over the state law claims. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998). The district court's discretion to relinquish supplemental jurisdiction is "almost unreviewable," especially when all federal claims have been dropped from the case before trial and only state law claims remain. *Id.* "At that point, respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Id.* In fact, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal

15

claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.* 193 F.3d 496, 501 (7th Cir. 1999).

This case is precisely the situation described in § 1367(c)(3). The only claims giving rise to federal jurisdiction in the first instance were plaintiffs' FHA claims, and the court dismissed these claims, *supra* Sect. II.B. Because the FHA claims have been dismissed, federal jurisdiction over the remaining counts is based entirely upon the supplemental jurisdiction statute which provides that a district court "may decline to exercise supplemental jurisdiction" over supplemental state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Therefore, it is within this court's discretion to proceed with plaintiffs' state law claims or dismiss them. To make this determination, the court must balance the factors of judicial economy, convenience, fairness and comity. *See Intel Coll. of Surgeons*, 522 U.S. at 172.

First, judicial economy is not served by this court's retention of jurisdiction. At this point, the burden of the state law claims would be the same for a federal as for a state court, and there would be no substantial duplication of effort if the state law claims were tried in state court. *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (holding that the district court should have relinquished jurisdiction over state law claims when the federal claims were dismissed and there was very little federal judicial investment in the state law claims).

Second, convenience is not served by this court's retention of jurisdiction. The state law claims are not patently frivolous, nor is it absolutely clear to this court how the supplemental state law claims will be decided. *See Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997) (reaffirming the "no brainer" exception to the general rule that federal courts should

relinquish jurisdiction of state law claims); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993) (holding that retention of a state law claim is appropriate when the correct disposition of the claim is "so clear as a matter of state law that it could be determined without further trial proceedings and without entanglement with any difficult issues of state law ...."); *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993) (holding that retention of jurisdiction over case was improper where state law was unsettled).

Finally, fairness and comity are not served by this court's retention of jurisdiction. Under § 1367(d), the period of limitations for any claim asserted under subsection (a) "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, dismissal of the state law claims on jurisdictional grounds will not preclude plaintiffs from pursuing this matter in state court. *See Olde Discount, Inc. v. Parker*, No. 97 C 5746, 1998 WL 901673, at *4 (N.D. Ill. Dec. 21, 1998). Further, no res judicata effect attaches to the claims the court dismisses for lack of subject matter jurisdiction. *See Follkie v. City of Chicago*, No. 97 C 154, 1997 WL 527304, at *6 n.7 (N.D. Ill. Aug. 19, 1997).

In sum, judicial economy, convenience, fairness and comity do not compel this court to retain jurisdiction over plaintiffs' state law claims. This case belongs in state court. Therefore, this court exercises its discretion in dismissing without prejudice the remaining state law claims, Counts IV-VII of plaintiffs' second amended complaint. Plaintiffs are free to file these claims in state court.

## III. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part defendants' motion to dismiss. The court grants defendants' motion to dismiss Counts I-III, involving the Fair Housing Act. On its own motion, the court dismisses without prejudice Counts IV-VII, the remaining state law claims. The court denies as moot defendants' motion to dismiss Counts V and VII and defendants' motion to quash.

Date: JUL 02 2002

Judge James H. Alesia
United States District Court